**Samuel MOORE, Jr.**

v.

**Dr. Errol L. REESE, et al.**

**No. L–91–1563.**

United States District Court, D. Maryland.

March 30, 1993.

---

Maxine Bethel Cade, Washington, DC, for plaintiff.

J. Joseph Curran, Jr., Atty. Gen., and William F. Howard, Asst. Atty. Gen. of MD, Baltimore, MD, for defendants.

## MEMORANDUM

LEGG, District Judge.

This employment discrimination case arises from plaintiff's discharge from employment at the University of Maryland (the "University"), and the subsequent refusal to rehire him. Plaintiff claims these decisions were motivated by race and age discrimination and were made in retaliation for a previous employment discrimination claim he filed

against another department of the University. Now before the Court is the motion for summary judgment filed by defendants Errol L. Reese, Jan Cerny, Denise Harmening and Fred Bank.[1] The issues have been fully briefed and no hearing is necessary. Local Rule 105.6 (D.Md.).

This case is ripe for summary disposition because there are no issues of material fact. Defendants are entitled to judgment as a matter of law; therefore, defendants' motion for summary judgment will be GRANTED and judgment will be entered in favor of defendants Reese, Cerny, Bank and Harmening, and against plaintiff, by separate order.

## I. FACTS

Plaintiff, Samuel Moore ("Moore"), is a Black male, who at the time he was discharged from his job at the University of Maryland (the "University") was fifty-nine (59) years old. He is suing various former and present employees of the University[2] for employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. §§ 2000e to 2000e-17,[3] and the Age Discrimination in Employment Act of 1967 (the "ADEA"), as amended, 29 U.S.C. §§ 621-634.[4] Moore seeks monetary, declaratory, and injunctive relief.

Plaintiff's complaint alleges the following discriminatory acts: (1) discharge from his position as instructor in the medical technology program on the basis of race, in violation of Title VII; (2) discharge from that position on the basis of age, in violation of the ADEA; (3) retaliatory discharge, in violation of Title VII; (4) refusal to hire into the position of either microbiology professor or administra-

tor of the medical technology department on the basis of race, in violation of Title VII; (5) refusal to hire into either position on the basis of age, in violation of the ADEA; and (6) refusal to re-hire in retaliation for an earlier employment discrimination complaint, in violation of Title VII.

Moore was hired by the University in September of 1988 as an "instructor" in the Medical Technology program in the School of Medicine (the "program"). Defs.' Mot. Summ.J., Ex. 6. During the 1988–89 academic year he team taught Microbiology with four other instructors. Cartwright Aff. at ¶ 6 (Defs.' Reply Mem., Ex. 1).

Moore's duties changed, however, for the 1989–90 academic year. During the 1989–90 academic year he no longer taught microbiology, but rather assumed purely administrative duties, including recruiting activities, as an assistant to the program's director, Dr. Jason Masters. Cartwright Aff. at ¶¶ 7 and 8. Moore neither objected to nor challenged this change in duties. At his request, Moore was given the title "Special Assistant to the Director." Moore Dep. at 94. He performed his new administrative duties well, receiving a recruiting award from the student body.

During 1989, the program began searching for a new director. In the fall of that year, the search narrowed to Dr. Denise Harmening, who at that time was Dean of the Medical Technology Department at Thomas Jefferson University in Philadelphia, Pennsylvania. As part of the interview and recruiting process, Dr. Harmening was asked to propose changes in the organization and structure of the program, which the University considered in need of improvement.

1. The Court finds that defendant Morton I. Rapoport was never served in this case and has never answered. By separate order, the complaint will be dismissed against Rapoport without prejudice.

2. Moore has not named the University of Maryland as a defendant in this case.

3. Title VII provides in relevant part:

   It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–2(a)(1).

4. The ADEA provides in relevant part:

   It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.
29 U.S.C. § 623(a)(1).

After Dr. Harmening became the candidate of choice, but before she was officially retained as a consultant to the program, she proposed eliminating the two full-time recruiting positions and instead dividing recruiting duties among all faculty members. One of the two recruiters was Moore.[5] Dr. John M. Dennis ("Dennis"), Dean of the Medical School, decided to take Dr. Harmening's recommendation, so he sent a letter to Moore on December 21, 1989[6] advising Moore that his position had been discontinued and that his contract with the University would not be renewed. *See* Pl.'s Opp. to Mot.Summ.J., Ex. III.

In March of 1990, Moore applied for the publicly advertised positions of "Faculty/Microbiology" and "Faculty/Administrator",[7] but was not chosen by the search committees for either position.[8] Moore contends that he was qualified for both positions. He also contends that he should have been considered for, and hired as, an administrative assistant because, when it rejected him for the Microbiology Faculty, Assistant Professor position, the search committee noted that he "[s]hould be seriously considered for a post such as administrative assistant." Defs.' Reply Ex. 12. Plaintiff, however, admits that he never applied for the advertised administrative assistant position, and this Court finds that it is the University's policy to consider only those applicants who actually apply for an open position.[9]

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Adickes v. S.H. Kress*

---

5. Moore vehemently argues that he was not a "recruiter" but was rather a "microbiology instructor". This argument fails, however, because defendants have shown, through extensive deposition and affidavit testimony, that "instructor" was a generic term used at the University to denote anyone who was appointed as a member of the faculty, as opposed to a classified employee. The woman who plaintiff admits was a "recruiter" was also categorized as an "instructor" and was also appointed into the medical technology department. Therefore, it is irrelevant that Moore's employment contract was not changed following his change of duties. At the University, one's classification was determined not by one's title of "instructor," but rather by the duties actually performed on the job. Deposition testimony establishes that Moore spent approximately half of his time conducting recruitment activities.

6. Moore's complaint appears to allege breach of employment contract and violation of due process rights. Compl. ¶ 24. These allegations are defective, however, because Moore does not name the University as a defendant in his suit. Moore's contract was with the University, not with any of the named individuals; a breach of contract claim is properly brought against the University, not the individual defendants. Second, individuals do not have due process claims against other individuals. Finally, Moore's contract with the University contains grievance procedures; Moore fails to plead that he attempted to pursue those procedures. He therefore cannot state a claim for breach of any due process rights.

7. The positions for which plaintiff applied were advertised as follows:

> **FACULTY/Administrator,** 10-mo., to teach Professional Seminar and Lab Management. PR/writing/administrative experience, liberal arts background, PhD preferred, teaching experience required.
> **FACULTY,** Microbiology, F/T 10-mo. to teach in Medical Technology Program. MS +/or PhD, teaching experience + national certification required.

8. The University established a search committee for each advertised position in the new department. Dr. Harmening appointed the committee members and oversaw the selection process. She, however, did not directly participate in the application review process undertaken by each search committee. Each committee chose a candidate, informed Dr. Harmening of its choice, and Dr. Harmening then accepted the recommendation and tried to persuade the chosen candidate to accept the position. Harmening Aff. at 42, 44, 65, 66, 136.

9. This is a sound policy. Otherwise, the University would be required to search through the files of all present employees to determine if anyone were qualified for the new opening.

*& Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). In determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985).

Only facts which bear on the outcome of the suit under the applicable law are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material factual disputes are "genuine" only if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. *Id.* at 248–49, 106 S.Ct. at 2510–11. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. at 2512.

In the employment discrimination context, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 557 (5th Cir. 1983), *cert. denied sub nom. Elliott v. Group Hospital Service, Inc.,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *see also Mathews v. Capital Cities/ABC, Inc.,* 1990 WL 256304, 1990 U.S.Dist. LEXIS 18429, 54 F.E.P. (BNA) 605 (M.D.N.C. November 2, 1990). The plaintiff must come forward with independent facts establishing a material issue of fact in order to overcome the defendants' motion for summary judgment.

When the non-moving party will bear the burden of proof at trial, he must present evidence, in the form of affidavits, depositions, or otherwise, which demonstrates that there is a genuine issue for trial. *Celotex,* 477 U.S. at 317, 106 S.Ct. at 2548. The moving party is entitled to judgment as a matter of law where the non-moving party

has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

**B.** *Title VII and ADEA Proof Schemes*

A Title VII and ADEA plaintiff must ultimately prove that "but for" his employer's discriminatory intent he would not have been terminated, or he would have been hired. This may be done through direct or indirect evidence. Because direct proof is usually difficult to obtain, a plaintiff may avail himself of the proof scheme set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* established a burden shifting framework for Title VII cases which is also applied in ADEA cases. Initially, the plaintiff must raise an inference of discrimination, *e.g.,* he must make out a prima facie case.[10]

Once a plaintiff has made out his prima facie case, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the challenged employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer comes forward with such a reason, then the burden of proof lies with the plaintiff to show, by a preponderance of the evidence, that an impermissible criterion, such as race, was the more likely reason for the adverse employment action, or that the employer's proffered reason is simply "unworthy of credence." *Tuck v. Henkel Corp.,* 973 F.2d 371 (4th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455–56 (4th Cir.1989).

Although the burden of production shifts under *McDonnell Douglas,* the ultimate burden of persuasion always remains on the plaintiff. In the summary judgment context, once a plaintiff has established a prima facie case, and the defendant has enunciated a legitimate nondiscriminatory explanation, the plaintiff must come forward with sufficient evidence for a jury to conclude

---

**10.** The specific elements of each proof scheme differ slightly depending upon the type of discriminatory employment action alleged; there-fore, the elements of each proof scheme will be defined and discussed later with respect to each allegation made by Moore.

that the employer's justification is merely a mask for impermissible discrimination.

### C. *"Employer" Status Under Title VII and the ADEA*

■ In a Title VII or ADEA suit, a plaintiff may sue his "employer," which includes any agent of the employer. 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b). Moore proceeds under an agency theory against all defendants. He names them all "solely in [their] official capacity" and alleges that each was acting within the University's chain of command. In the absence of a statutory definition of "agent", courts apply traditional principles of agency law.

An "agent" under both Title VII and the ADEA has generally been defined as a supervisory or managerial employee who has the responsibility of making or contributing to employment decisions.[11] *See Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir.1990); *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985); *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 81 (3rd Cir.1983); *York v. Tennessee Crushed Stone Assoc.*, 684 F.2d 360, 362 (6th Cir.1982); *House v. Cannon Mills Co.*, 713 F.Supp. 159 (M.D.N.C.1988); *McAdoo v. Toll*, 591 F.Supp. 1399, 1408 (D.Md.1984).

In a Title VII case brought against the University of Maryland, Judge Joseph H. Young of this Court held that "those individuals who are charged with the responsibility of making—or contributing to—employment decisions for the University of Maryland are liable as its agents under Title VII." *McAdoo v. Toll*, 591 F.Supp. at 1408. Accordingly, only those defendants in this case who were responsible for making or contributing to employment decisions affecting Moore can be liable as agents of the University.

Plaintiff here presents no evidence to connect defendants Reese, Cerny or Bank with employment decisions at the University. Furthermore, at deposition, Moore admitted that Reese and Cerny were not involved in

the challenged decisions. Moore Dep. at 4–5, 7–8.

Plaintiff believes that Bank must have played a part in the employment decisions affecting him because Bank was Director of the Office of Human Resource Management ("OHRM"), and because Moore turned in his keys and signed exit paperwork at the OHRM office. Moore Dep. at 5–7. In his affidavit, however, Bank denies any involvement in the employment decisions affecting Moore and any knowledge of Moore's 1985 discrimination complaint. Moreover, one cannot infer from the nature of Bank's position either that he knows the identity of every University employee who has filed an EEOC charge or that Bank participates in faculty hiring decisions.

Neither Reese, Cerny, nor Bank is an agent of the University; thus, none is an "employer" within the meaning of Title VII and the ADEA. Summary judgment, therefore, will be entered in their favor.

The only remaining defendant is Dr. Denise Harmening. It is open to discussion whether or not she was an agent of the University in December, 1989, when Moore was discharged. Dr. Harmening, however, clearly was an "agent," and therefore an "employer," within the meaning of Title VII and the ADEA, in connection with the decision not to hire plaintiff for either of the two positions for which he applied in March, 1990.

■ Generally, for purposes of Title VII and the ADEA, only an employee can be an "agent" of the employer. In this case, Dr. Harmening instructed Dr. Dennis to discontinue the two recruiting positions, resulting in Moore's termination, before she was formally employed by the University. She did not officially become a consultant until January 22, 1990, which was after plaintiff had received his December 12, 1989 termination letter from Dr. Dennis. Accordingly, with respect to Moore's termination claim, this Court concludes that she was an "employer"

---

11. The majority of courts analogize the definition of "agent" in ADEA cases from its definition in      Title VII cases.

within the meaning of Title VII and the ADEA.[12]

Nonetheless, it is beyond doubt that Dr. Harmening, before she became a University employee, was a prime mover in the program's reorganization. Courts have interpreted the term "employer" broadly so as best to fulfill the remedial purposes of Title VII. *McAdoo v. Toll*, 591 F.Supp. at 1405. Because of the unusual factual setting presented by this case, the Court will rule alternatively and assume arguendo that Dr. Harmening was an "agent" of the University, and therefore a Title VII and ADEA "employer," during the time plaintiff's position was eliminated. Even under this assumption, Dr. Harmening, for the reasons set out below, would be entitled to summary judgment on all counts.

### D. *Moore's Title VII Race Based Discrimination Claims*

Plaintiff alleges that the decision to discharge him and the subsequent refusal to rehire him were impermissibly racially motivated.

#### 1. Racially Motivated Discharge

■ In a Title VII discharge case, plaintiff states a prima facie case when he shows:

(1) that he is a member of a protected class;

(2) that he was qualified for his job and his job performance was satisfactory;[13]

(3) that, in spite of his qualifications and performance, he was fired; and

(4) that the position remained open to similarly qualified applicants after his dismissal.

*Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989); *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986) (en banc); *Smith v. University of North Carolina*, 632 F.2d 316, 332 (4th Cir.1980). Plaintiff fails to make out a prima facie case because he cannot show that he was replaced by an individual of comparable or lesser qualifications. Rather, his position was discontinued, so he was replaced by no one.

Plaintiff contends that his "position" was "microbiology instructor." That contention, however, is not sustained by the evidence, or any reasonable inferences therefrom. Moore's employment contract with the University states that he was appointed to be an "instructor" in the medical technology department of the School of Medicine. The contract does not specify whether he was hired as a classroom instructor, lab technician, administrative assistant, or recruiter. The record contains substantial unrefuted evidence that all members of the faculty, as opposed to "classified" employees, were appointed with the title of "instructor." The individual who Moore admits was a full-time recruiter was hired as an "instructor." In fact, her contract is identical to Moore's.

■ Even assuming, *arguendo*, that Moore can make out a prima facie case, he presents insufficient evidence to create an issue of material fact concerning the pretextual nature of the University's explanation for his termination, *i.e.*, that his position of recruiter was discontinued. Moore presents no evidence of racial remarks made about any employment action, no evidence that many minority employees of the program were terminated as a result of the reorganization[14], or any other circumstantial evidence probative of discriminatory intent in

---

**12.** Additionally, Moore has sued Dr. Harmening in her official capacity only. Having framed his complaint this way, plaintiff should not now be able argue that Dr. Harmening is liable for actions taken before she had any "official capacity."

**13.** Defendants do not contend that plaintiff's performance in his administrative duties at the time his contract was terminated was unsatisfactory. Rather, the evidence reflects the University's satisfaction. There is a dispute surrounding Moore's performance as a teacher; however, that dispute is not material because Moore does

not allege that the change in his duties was racially or age motivated. He also did not complain at the time his duties were changed.

**14.** Moore does state that 2 or 3 other Black employees were terminated at about the same time he was, but he fails to give these numbers meaning because there is no evidence about the number of whites who lost their jobs, and there is no evidence about the nature of the job duties performed by the terminated Black employees. Furthermore, he offers no documentary evidence to support his personal belief.

the University's decision to terminate Mr. Moore's contract.

It is settled that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams,* 871 F.2d at 456 (citing, *Gairola v. Commonwealth of Virginia Dept. of General Services,* 753 F.2d 1281, 1288 (4th Cir.1985)). Furthermore, Dr. Harmening was unaware of Moore's age or his race when she decided to eliminate the recruiter position he held. Harmening Dep. at 16, 95, 96. Title VII prohibits intentional racial discrimination. It is impossible for an employer, who does not know the race of an employee, to discriminate against that employee.

**2. Racially Motivated Refusal to Rehire**

■■■ Plaintiff also alleges discriminatory intent in the University's failure to rehire him as a faculty administrator or a microbiology professor. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the elements of a plaintiff's prima facie case in a failure to hire suit. A plaintiff must show:

(1) that he belongs to a protected minority;

(2) that he applied and was qualified for a job for which the employer was seeking applicants;

(3) that, despite his qualifications, he was rejected; and

(4) that, after his rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824.

In the instant case, Moore fails to show that after his rejection the position remained open and the employer continued to seek applications from persons of his qualifications. The individuals ultimately chosen for the two positions each had a Ph.D., a qualification which Moore lacks. One of the positions did remain open following Moore's rejection, but, as stated, the University sought, and eventually hired, a candidate with a Ph.D. The Fourth Circuit recently held that "[w]hen two applicants meet the minimum educational qualifications of a position, Title VII does not prevent an employer from preferring the applicant who has educational qualifications which surpass the minimum requirements of the position." *Wileman v. Frank,* 979 F.2d 30, 37 (4th Cir.1992).

Mr. Moore also has not presented any satisfactory evidence for a jury to conclude that the stated reason for his rejection, *i.e.,* Moore does not have a Ph.D., is merely a pretext for racial discrimination.

**E. *Title VII Retaliation Claims***

■■■ Moore contends that both of the adverse employment decisions he suffered were made in retaliation for his 1985 employment discrimination claim against the University of Maryland School of Medicine.[15] Dr. Harmening is entitled to summary judgment because Moore cannot establish a prima facie case. In the retaliation context, a plaintiff makes out a prima facie case when he shows by a preponderance of the evidence that:

(1) He participated in a charge under Title VII;

(2) He suffered adverse employment action; and

(3) There is a causal connection between the participation and the adverse employment action.

*Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989); *Mathews v. Capital Cities/ABC, Inc.,* 1990 WL 256304, 1990 U.S.Dist. LEXIS 18429, 54 Fair Empl.Prac. Cas. (BNA) 605 (M.D.N.C. Nov. 2, 1990).

■■■ Proof that the decision-maker was unaware of the protected activity defeats liability because it makes the establishment of a causal connection impossible. *Jarrell v. Eastern Airlines, Inc.,* 430 F.Supp. 884, 891 (E.D.Va.1977), *aff'd per curium,* 577 F.2d 869 (4th Cir.1978); *see also Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) ("mere knowledge ... that an employee ...

---

**15.** At the time of his employment at the University of Maryland School of Medicine, the hospital was part of the University. The hospital is now an independent entity.

has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee.")

The Fourth Circuit has stated that, "[e]ven if discriminatory animus or retaliation is 'in part' a reason for the adverse employer actions, this circuit requires that the plaintiff prove that he would not have been discharged 'but for' the filing of the charge." *Ross*, 759 F.2d at 366. This is a rigorous standard of proof. The evidence in this case cannot, as a matter of law, support the conclusion that Moore was discharged in retaliation for his previous protected activity. There is absolutely no evidence that Dr. Harmening had knowledge of Moore's 1985 EEOC complaint and subsequent lawsuit either at the time Moore was terminated or at the time he was not rehired.

### F. *ADEA Claims*

Plaintiff offers no direct evidence of an intent to discriminate against him on the basis of age, so if he is to withstand defendants' motion for summary judgment, Moore must satisfy the *McDonnell Douglas* proof scheme. In a case alleging termination motivated by impermissible consideration of age, the plaintiff's prima facie case consists of the following:

(1) That he is a member of the protected class; [16]

(2) That he was discharged;

(3) That at the time of his discharge he was performing his job at a level that met his employer's expectations; and

(4) That a person outside the protected class was retained in the same position.

*Tuck v. Henkel Corp.*, 973 F.2d 371 (4th Cir.1992); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir.1992). In order to withstand a motion for summary judgment, the plaintiff must introduce evidence raising a genuine issue as to whether age was a "determining factor" in the employer's decision. *Duke v. Uniroyal, Inc.*, 928 F.2d 1413,

1417 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991).

There is no dispute that plaintiff was within the protected class, that his contract was terminated, and that at the time of his termination he was performing his job at an acceptable level. As discussed above, plaintiff's "job" at the time of his termination was assistant to the director, a position involving solely administrative duties, approximately half of which involved recruiting. Plaintiff, therefore, cannot satisfy his prima facie case because the "job" which he held was discontinued in the reorganization of the department. It was therefore impossible for a person outside the protected class to be retained in the position.

Even assuming *arguendo* that plaintiff could establish a prima facie case, Moore presents no evidence to support a finding that the proffered explanations for the employment decision are pretextual. Moore was fifty-seven (57) when he was hired, and was therefore already well into the protected class. "[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991).[17]

This Court's analysis of plaintiff's claim for failure to rehire on the basis of age is identical to the analysis applied to his race discrimination claim arising out of the same employment action. Moore has presented no evidence to rebut defendants' nondiscriminatory explanation for its refusal to rehire him. The other candidates had stronger educational backgrounds. Many well-qualified candidates were turned down. Plaintiff presents no evidence that the rejected candidates were all older. Accordingly, Dr. Harmening is entitled to summary judgment on Moore's age discrimination claims.

### III. CONCLUSION

At trial, Moore would bear the ultimate burden of persuasion. Accordingly, at the

---

**16.** The group protected by the ADEA is those over 40 but under 70.

**17.** Moore asks the Court to infer pretext from the fact that reorganization of the new department is

as yet incomplete. This factor, however, standing alone does not justify such an inference. *See Tuck v. Henkel Corp.*, 973 F.2d 371 (4th Cir. 1992).

summary judgment stage, he must present sufficient evidence to sustain a jury's finding, by preponderance of the evidence, that the defendants made the challenged employment decisions on the basis of impermissible considerations. Moore fails to carry that burden. There are, therefore, no genuine issues of material fact, and defendants Reese, Cerny, Bank and Harmening are all entitled to judgment as a matter of law. Defendant Rapoport was never served, so the complaint against him will be dismissed without prejudice, by separate order.