**Mary Joyce BROWN, Plaintiff,**

v.

**FIRST CITIZENS BANK, Defendant.**

**Civil Action No. 8:97–2251–13AK.**

United States District Court,
D. South Carolina,
Anderson Division.

June 17, 1998.

Stephen J. Henry, Taylor & Henry, Greenville, SC, Hal Jerome Warlick, Warlick Law Office, Easley, SC, for Plaintiff.

Mary Joyce Brown, Anderson, SC, pro se.

Janis Wilson Johnson, Haynsworth, Baldwin, Johnson & Greaves, P.A., Katherine Dudley Helms, Charles T. Speth, II, Haynsworth Baldwin Johnson and Greaves, Columbia, SC, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GEORGE ROSS ANDERSON, Jr., District Judge.

This matter comes before the Court on the Motion for Summary Judgment of Defendant First Citizens Bank ("Defendant's Motion for Summary Judgment"). A hearing on Defendant's Motion for Summary Judgment was held on May 29, 1998. Plaintiff was represented at the hearing by Hal J. Warlick, and Defendant First Citizens Bank ("the Bank") was represented by Charles T. Speth II.

In her Complaint, Plaintiff alleges that the Bank's decision not to promote her to the position of Branch Manager of its Ware Shoals Branch in November 1995 was racially motivated and thus violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.*, as well as her civil rights under 42 U.S.C. Section 1981. Alternatively, Plaintiff further a leges that she was not promoted to this position in retaliation for filing a charge of discrimination with the South Carolina Human Affairs Commission ("SHAC") and the Equal Employment Opportunity Commission ("EEOC") in June 1993, in violation of Title VII of the Civil Rights Act of 1964, as amended.

First Citizens Bank moved for summary judgment on all of Plaintiff's causes of action. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and dismisses Plaintiff's Complaint in its entirety.

### I. UNDISPUTED FACTS

Plaintiff is an African–American citizen and a resident of Anderson County, South Carolina. She secured her first job as a bank teller for First National Bank in Anderson, South Carolina, in 1977. She worked for this bank as a teller at its Lakeside Shopping Branch in Anderson until 1984. In September 1984, First Citizens Bank acquired First National Bank, and Plaintiff was thereafter employed by the Bank.

Since becoming employed by the Bank in 1984, Plaintiff has received various promotions and has held the following ti-

tles: Teller, On The Job Teller Trainer, Head Teller, City Vault Teller, Branch Supervisor, and Assistant Branch Manager/Lending Officer. She has never held the position or title of Branch Manager. Specifically, in 1986 Plaintiff's first promotion was from Teller to Head Teller of the Bank's Shockley Ferry Branch in Anderson. In that position, she worked over three other tellers and had no sales, loan, or regular customer service duties. Shortly thereafter, Plaintiff was promoted to City Vault Teller at the North Point Branch in Anderson. Here, Plaintiff was responsible for receiving and shipping cash requests for other Anderson branches and for the Federal Reserve and for performing the duties of Head Teller over two other tellers. She had no other supervisory duties, no regular business development duties, no specific sales responsibilities, and no lending responsibilities. In 1989, Plaintiff was promoted to Branch Supervisor of the Lakeside Mall Branch in Anderson, a small walk-up teller branch. There she supervised operation of the facility, was Head Teller over two other tellers, and was responsible for customer service.

On June 24, 1993, Plaintiff filed a Charge of Discrimination ("the 1993 Charge") with SHAC and the EEOC. In the 1993 Charge, Plaintiff alleged that she "was denied promotional opportunities to Loan Officer on two occasions" because of her race in violation of Title VII of the Civil Rights Act of 1964, as amended. The two promotional opportunities referred to were a job vacancy for Branch Manager at the Southside Branch and a Commercial Lending vacancy in Anderson. SHAC and the EEOC concluded their respective administrative investigations in the fall of 1993. Plaintiff did not pursue these claims any further.

Subsequent to the resolution of the 1993 Charge, Plaintiff was offered the 90–day lending training she had previously requested in the Bank's Spartanburg office. Plaintiff accepted the offer for training and, upon completion, was offered the job of Branch Supervisor of the Boiling Springs Branch in Spartanburg, her present position. As such, she assists and fills in for the Branch Manager, makes some loans (mostly consumer but some commercial), takes but does not process mortgage loan applications, calls on existing or prospective customers, and sells some insurance products. Plaintiff is under the day-to-day supervision of an on-site Branch Manager.

In 1995, Plaintiff heard that the Branch Manager of the Ware Shoals Branch was planning to retire. The Ware Shoals Branch was under the supervision of the City Executive in Anderson, South Carolina. The Ware Shoals Branch was and is located in Ware Shoals, South Carolina, approximately 35 miles from Anderson. Ms. Mary Pearman was the retiring Branch Manager. She had been employed at the Ware Shoals Branch since 1945 and had been Branch Manager since 1969. Ms. Pearman acted more independently as Branch Manager than other Branch Managers because of her experience and geographical location separate from the Anderson City Executive.

Plaintiff notified Bank management of her interest in the Ware Shoals position on November 20, 1995. Thereafter, on November 29, 1995, Plaintiff first saw an official posting of the vacancy of the Ware Shoals position on the Bank's electronic bulletin board of job vacancies. This posting stated: "POSITION RESPONSIBILITIES," but listed no specific position requirements. On December 20, 1995, the job was again posted on the electronic bulletin board. The listed Position Responsibilities in this posting were identical to the November posting. However, a "POSITION REQUIREMENTS" section had been added to this posting stating the following: "Position Requirements: Previous Branch Manager experience."

To solicit applications for this position, the Bank also ran ads in South Carolina newspapers prior to posting it on its elec-

tronic bulletin board. All of its ads stated that previous branch manager experience was a requirement for the position. One such ad ran in *The Greenwood Index–Journal* in Greenwood, South Carolina, from November 17 through November 19, 1995. It stated that a "minimum of 3–5 years experience required." Another similar ad ran in *The Greenville News* on November 19 and November 26, 1995. It, too, stated that a "minimum of 3 to 5 years experience" was required for the position.

Plaintiff was not interviewed for or offered the Ware Shoals position. Rather, the job was offered to David Estes, a white male with a total of nine years of prior banking experience. Specifically, Mr. Estes has four years' experience as a Branch Manager, three years' experience as an Assistant Branch Manager, and two years' experience as a Commercial and Mortgage Loan Officer and Processor. Mr. Estes also had extensive community involvement.

## II.  ARGUMENT AND AUTHORITIES

### A.  Standard For Summary Judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When a defendant properly offers its motion for summary judgment with evidence which supports the view that the defendant is entitled to judgment as a matter of law, the plaintiff must present "affirmative evidence" to establish a genuine dispute of material fact in order to defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *mot to relax costs denied*, 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987). The plaintiff must show that there is evidence upon which a finder of fact can reasonably find in its

favor. *Id.* at 252, 106 S.Ct. 2505. If the plaintiff fails to do so, the court must grant summary judgment against the plaintiff. *Id.*

In the present case, the facts, when taken in the light most favorable to Plaintiff, simply do not establish that there is a genuine issue of material fact left for trial. Furthermore, the undisputed facts support judgment as a matter of law for Defendant.

### B.  Plaintiff Cannot Establish Her Race Discrimination Claim Under Title VII Of The Civil Rights Act Of 1964, As Amended, Because She Was Not A Qualified Candidate And Because The Bank Had Legitimate, Nondiscriminatory, And Nonpretextual Reasons Not To Offer Her The Job.

#### 1.  Plaintiff Cannot Establish That She Met The Qualification Requirements For The Ware Shoals Position.

■ Title VII prohibits discrimination by employers based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e(b) (1994). To establish a prima facie case, Plaintiff must show: (1) that she belongs to a racial minority; (2) that she applied and was qualified for the job she was not offered; (3) that despite her qualifications, she was rejected; and (4) that after the rejection, the position remained open to seek applications from persons of Plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ It is uncontested that in November 1995, Plaintiff applied for a position as Branch Manager of the Bank's Ware Shoals Branch ("the Ware Shoals Position"), that she was denied that promotion, and that a white male was ultimately offered the Ware Shoals Position. However, the facts do not support her claim that she was minimally qualified for this position.

The Bank is free to set forth the qualifications required for each of its job vacancies. It determined that prior branch manager experience would be required of any applicant for the Ware Shoals Position. The facts show that this requirement of previous experience was set as a minimal qualification when the job vacancy was first made public.

The Bank first advertised the Ware Shoals Position in *The Greenwood Index–Journal* on November 17, 18, and 19, 1995. This ad stated "minimum of 3–5 years experience required." On November 19 and November 26, 1995, *The Greenville News* ran a similar ad that also stated that a minimum of three to five years of branch manager experience was required for the Ware Shoals Position. The next time the job was publicized occurred on November 29, 1995, when Teresa Smith, Compensation/Benefits Manager, posted it on the electronic bulletin board on the Bank's internal computer system. This posting did not list any position requirements and, thus, omitted the minimum branch manager experience language. However, this omission was remedied, and the full job description with prior branch manager experience requirement was posted on December 20, 1995.

Plaintiff made the Bank aware of her interest in the Ware Shoals Position on November 20, 1995. Plaintiff tries to assert that the change in the job requirements in the internal posted versions of the position proves that the Bank wanted to avoid her qualifying for the job because of the Bank's racial or retaliatory motive. However, Plaintiff submitted no facts to support this belief. Furthermore, the newspaper advertisements ran before she expressed her interest in the job. Both newspaper advertisements required branch manager experience. Last, Plaintiff has no evidence to contradict the Bank's explanation set forth in the sworn statement of Teresa Smith that the omission of the prior experience requirement on the November 29, 1995, job posting was

unintentional and a mere procedural glitch in the electronic posting process. Plaintiff, therefore, cannot establish that the Bank changed its qualifications for the Ware Shoals Position after she applied for the position and in response to her application.

The Bank has the legal right to establish minimum qualifications it requires. As set forth by the Fourth Circuit Court of Appeals:

> The employer has the right to fix the qualifications that are "necessary or preferred" in selecting the employee for promotion, and, in order to make out a prima facie case, a plaintiff must establish that she meets these qualifications.

*E.E.O.C. v. Federal Reserve Bank of Richmond,* 698 F.2d 633 at 671 (4th Cir.1983).

The Bank determined that the Ware Shoals Position needed a person with previous branch manager experience in light of its geographic separation from the City Executive's office in Anderson and the longevity of the employment of the person who vacated the position. It is Plaintiff's burden to show that she met the qualifications in order to establish her prima facie case. Plaintiff held numerous positions with the Bank and had been a satisfactory employee. It is uncontested, however, that she simply did not have any branch manager experience when she applied for the Ware Shoals Position in November 1995 or when the job was filled in May 1996.

Plaintiff also alleges that even if prior branch management experience was a valid qualification for the job, her experience as a Branch Supervisor with Assistant Branch Management duties is equivalent to branch management experience. Plaintiff admits, however, that, except in unusual circumstances, as an assistant she was under the direct on-site supervision of a Branch Manager. Therefore, her own testimony is proof that her experience as an Assistant Branch Manager/Supervisor is not equivalent to that of a Branch Manager in that an Assistant Branch Manager

always works under a superior who has the ultimate responsibility for the welfare of the Branch.

Whether or not Plaintiff believes these qualifications are equivalent, the Bank sets the qualifications it requires for each job vacancy. When the Bank states, as it did in this case, that branch management and not merely branch supervisor experience is required, then Plaintiff simply does not meet the minimum job requirements. Even though Plaintiff may believe she could have handled the job, she still is not minimally qualified if she has not held the position of Branch Manager, and, thus, cannot establish a prima facie case of race discrimination. For this reason alone, Defendant is entitled to summary judgment on the Title VII claim.

### 2. Even If Plaintiff Can Establish She Met The Minimum Qualifications, The Bank Had Legitimate, Nondiscriminatory Reasons For Not Selecting Her.

Even if Plaintiff could establish a prima facie case in that she somehow met the minimum qualifications, the Bank has offered legitimate, nondiscriminatory reasons for not offering her the position. To rebut a prima facie case, a defendant need only "articulate [a] legitimate, nondiscriminatory reason for" its employment actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas *Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "[T]he employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 26 n. 2, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (citation omitted) (quoting language of dissent with approval). Any inference of discrimination created by Plaintiff's prima facie case is destroyed once the Bank sets forth its nondiscriminatory reasons. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239 (4th Cir.1982).

Plaintiff was not the most qualified applicant for the Ware Shoals Position. Mr. David Estes, the person who was hired for the Ware Shoals Position, was clearly more qualified than Plaintiff. The Bank lists the responsibilities of Branch Manager as lending, business development, supervision, branch operation, organization, and management. Mr. Estes was offered the job because he had extensive experience in all of these areas at the time he was offered the job and Plaintiff did not.

Plaintiff has never held the title or position of Branch Manager, has never held the title of Vice President or Assistant Vice President, and has never been a Mortgage Loan Originator. As a Teller from 1984 to 1989, she had very limited supervisory authority, business development experience, sales experience, or lending responsibilities. She also admits to limited community activities throughout her career. Furthermore, although she had just received lending training when she applied for the Ware Shoals Position, she had very little practical experience. Her first supervisory responsibilities were as Branch Supervisor from 1989–1993 at the Lakeside Branch. This is a very small facility with no lobby but rather with a walk-in window teller and ATM machine. This Branch does not service loan applications and conducts little business development. Here, Plaintiff was not responsible for selling insurance products, had no loan responsibilities, and received no awards or recognition. Last, during the time she has worked as Branch Supervisor/Assistant Branch Manager at Boiling Springs, she has had only limited lending authority, no regular supervisory authority, and could not discharge an employee. Therefore, Plaintiff at most had limited lending and management experience when she applied for the Ware Shoals Position.

David Estes, on the other hand, had a total of nine years of prior experience.

Specifically, Mr. Estes has four years' experience as a Branch Manager, three years' experience as an Assistant Branch Manager, and two years' experience as a Commercial and Mortgage Loan Officer and Processor. He had originated over $2,000,000 in loans during the quarter preceding his applying for the Ware Shoals Position. Mr. Estes had extensive experience in both consumer and commercial lending. He had been involved in marketing, sales calls, and sales presentations in the upstate area of South Carolina. Mr. Estes was licensed to sell various insurance products and, in fact, had experience in the sale of financially related insurance products. Finally, Mr. Estes had been active in many community programs such as the March of Dimes, Rotary Club, and Junior Achievement. Thus, Mr. Estes was clearly more qualified than Plaintiff for the Branch Manager position in Ware Shoals.

Plaintiff admits that, in its recruitment efforts, the Bank is not wrong for choosing the most qualified applicant, that previous experience makes a difference in someone's qualifications as a Branch Manager, and that some branches require more skill than others to manage. Thus, Mr. Estes' superior qualifications and the unique nature of the Ware Shoals Position are legitimate, nondiscriminatory reasons for the Bank's decision not to promote Plaintiff and to hire Mr. Estes instead.

### 3. Plaintiff Cannot Establish That The Bank's Reason For Not Promoting Her Is Pretext.

Once a defendant has articulated a legitimate, nondiscriminatory reason for its treatment of a plaintiff, it remains incumbent upon the plaintiff to show by a preponderance of the evidence that the defendant's articulated reasons were a mere pretext for unlawful discrimination or retaliation. *Walker v. International Business Machines Corp.,* 698 F.2d 959 (8th Cir.1983). Plaintiff must present some evidence from which the fact-finder could conclude that "but for" Plaintiff's

race, the allegedly adverse actions would not have occurred. See *Holmes v. Bevilacqua,* 794 F.2d 142 (4th Cir.1986) (directed verdict proper in absence of evidence of race discrimination); *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089 (citing *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. 1817). The "but for" standard is a rigorous standard of proof. *Moore v. Reese,* 817 F.Supp. 1290, 1299 (D.Md.1993). Simple coincidence is not sufficient to establish a causal relationship. *Bray v. Tenax Corp.,* 905 F.Supp. 324, 328 (E.D.N.C. 1995). In the case at hand, Plaintiff has not met her burden of establishing such a strict causal connection. Thus, she cannot show that the Bank's offered reason for not promoting her was pretextual.

The Bank has already established that the allegedly adverse employment action suffered by Plaintiff occurred because she was not qualified for the position and a more qualified applicant was hired. Plaintiff presents no evidence of racial discrimination whatsoever. Plaintiff never alleges and there is no evidence that any of the upper management at the Bank racially discriminated against her. Plaintiff admits that no one at the Bank ever told her that race was a factor.

Plaintiff only offers general unsupported allegations of a history of racial discrimination at the Bank to show race rather than qualifications was the Bank's motivating factor. First, Plaintiff mentions her personal conclusion that she and other blacks employed by the Bank were not promoted as quickly as whites. Plaintiff offers no specific evidence to support this conclusion, such as the names of the employees and under what circumstances they were promoted. Second, Plaintiff claims that race was the Bank's motive because the Bank employs "only two (2) African American Branch Managers out of sixty-seven, which were only promoted since Brown began making waves." Again, Plaintiff gives no specifics to support this claim, and the Court will not consider such raw statistics absent additional evidence of ra-

cial discrimination. *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir. 1991) (raw statistics showing percentage of minorities hired by plaintiff over eight-year period were "inadequate absent some further indication of their relevance" to show employer had discriminatory motive); see also *Hudson v. International Business Machines Corp.*, 620 F.2d 351, 355 (2nd Cir.1980); *Bhandari v. AT & T, Inc.*, 1990 WL 13099 at *1, 1990 U.S. Dist. LEXIS 1612, at *1 (D.N.J. Feb. 14, 1990). Therefore, these statistics offered in a vacuum, even if accurate and taken at face value, are not enough to enable Plaintiff to meet her burden that but for a racially discriminatory motive, she would have received the Ware Shoals Position.

Plaintiff's testimony simply does not support her claim of a company policy of racial discrimination. Further, absent any direct or circumstantial evidence that the Bank was racially motivated in hiring Mr. Estes, she cannot establish the causal connection required to overcome Defendant's Motion for Summary Judgment on this claim.

### C. Plaintiff Cannot Establish The Causal Connection To Prove Her Claim Of Retaliation Under Title VII Of The Civil Rights Act Of 1964, As Amended.

Plaintiff alternatively alleges that the Bank violated Title VII because it retaliated against her because she filed the 1993 Charge against the Bank. Plaintiff, however, cannot establish a prima facie case of retaliation, and the Bank is entitled to summary judgment on this Title VII claim also. Title VII of the Civil Rights Act of 1964, as amended, makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a) (1994).

In order to establish a prima facie case of retaliation and overcome a motion for summary judgment, Plaintiff must establish (1) that she engaged in protected activity, (2) that the Bank took adverse employment action against her, and (3) that there was a causal connection between the protected activity and the adverse action. *Dwyer v. Smith*, 867 F.2d 184 (4th Cir.1989); *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). Failure to produce evidence of an element of this prima facie case should result in judgment in favor of defendant. *Mayo v. Kiwest Corp.*, 94 F.3d 641, 69 Empl. Prac. Dec. (CCH) ¶ 44,383 (4th Cir.1996) (unpublished opinion). Even if Plaintiff can show that an adverse action was taken against her and that she filed the 1993 Charge, she cannot show a causal connection between the protected activity and the alleged adverse action taken against her.

The Fourth Circuit has stated that, "even if discrimination, animus, or retaliation is 'in part' a reason for the adverse actions, this circuit requires plaintiff prove that he would not have been discharged 'but for' the filing of the charge." *Moore v. Reese*, 817 F.Supp. at 1299 (citing *Ross*, 759 F.2d at 366). Just as Plaintiff cannot establish that race was the reason she was not promoted, she also cannot establish that "but for" her filing of the 1993 Charge, she would have received the Ware Shoals Position. In the present case, Plaintiff cannot show that the adverse action of which she complains was the consequence of her filing a charge of discrimination. As set forth previously, Plaintiff did not meet the minimum qualifications for the Ware Shoals Position, and nevertheless Mr. Estes was clearly more qualified for it than she. This undisputed evidence precludes Plaintiff from establishing a causal connection between her protected activity

and the Bank's decision not to offer her the Ware Shoals job.

Furthermore, Plaintiff submits no proof that retaliation was the motivation for the Bank's decision not to promote her. Plaintiff merely claims that she must have been retaliated against because she was labeled as a trouble-maker after the filing of the 1993 Charge. When asked what her basis was for claiming retaliation, Plaintiff stated in her deposition that "I believe because I filed the E.E.O.C. charge in '93, this is the bank's way of getting back at me, to hold me back, to now say because I don't carry the title [of Branch Manager], not in experience, then you have another reason to hold me back."

Plaintiff admits that no one at the Bank ever told her that she was not being promoted to the Ware Shoals Position because she filed the prior charge. She only states that she believes Darrelene Shaw retaliated against her when she did not call Plaintiff for an interview after the Ware Shoals Position was posted. Her subjective belief that this was in response to her filing the 1993 Charge is not sufficient evidence to prove retaliation.

The evidence in the record shows just the contrary. Among other things, since the 1993 Charge, the Bank has provided Plaintiff with the lending training that she requested at a convenient location. Also, the Bank promoted her to Branch Supervisor/Assistant Branch Manager subsequent to her filing of the 1993 Charge and has offered her a second promotion to Branch Manager at its Southside Branch. Plaintiff declined this second promotion. For all of these reasons, Plaintiff lacks sufficient evidence to prove retaliation was the Bank's motivation, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim under Title VII.

**D. Plaintiff Cannot Establish A Prima Facie Case Under The Civil Rights Act Of 1991, Section 1981, For The Same Reasons She Cannot Establish A Claim Under Title VII.**

Plaintiff alleges that the Bank's actions in not promoting her because of her race or, alternatively, in retaliation of her charge of discrimination [1] violated not only her statutory rights under Title VII, but also her rights under the Civil Rights Act of 1991, 42 U.S.C. § 1981. Again, Plaintiff cannot make out a claim under Section 1981. To make out a Section 1981 claim, Plaintiff must show that the Bank intentionally discriminated against her. Courts have generally held that the *McDonnell Douglas* criteria for establishing a prima facie case of disparate treatment under Title VII are applicable to Section 1981 cases as a means of showing discriminatory intent. *Chaline v. KCOH, Inc.,* 693 F.2d 477 (5th Cir.1982); *Jackson v. City of Killeen,* 654 F.2d 1181 (5th Cir. 1981); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1113 n. 34 (7th Cir.1992). Therefore, Plaintiff's claim under Section 1981 fails for the same reasons stated above that she cannot make out her claims under Title VII. In other words, because there is undisputed proof that Plaintiff was not qualified for the job she did not get or, alternatively, did not get the promotion for other legitimate, nondiscriminatory reasons not related to her race or her charge of discrimination, Defendant is also entitled to summary judgment on Plaintiff's claims under Section 1981 of the Civil Rights Act of 1991.

### III. CONCLUSION

Given the undisputed facts, Plaintiff cannot establish her claims of race discrimination or retaliation under either Title VII of the Civil Rights Act of 1964, as amended,

---

1. Even if the Court could decide that Plaintiff can establish either her race or retaliation claim under Title VII, she cannot also bring these claims under Section 1981 where she does not allege and has no evidence that she was discriminated against for asserting a contractual right, rather than a mere statutory one. See *Gonzalez v. Ingersoll Milling Machine Co.,* 133 F.3d 1025, 1033 (7th Cir.1998).

or under Section 1981 of the Civil Rights Act of 1991, because she cannot establish either that she was qualified for the job at issue or that race or retaliation motivated Defendant's adverse action against her. Therefore, Defendant is entitled to summary judgment as a matter of law.

Defendant's proffered legitimate, non-discriminatory reasons for its actions clearly predominate over Plaintiff's assertions of discriminatory motive. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims of race discrimination and retaliation.