Harriette McADOO

v.

John S. TOLL, et al.

Civ. No. Y-82-1770.

United States District Court,
D. Maryland.

Aug. 7, 1984.

Roma J. Stewart, Washington, D.C., and Samuel Hamilton, Silver Spring, Md., for plaintiff.

Frederick G. Savage, Asst. Atty. Gen., for Md., Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiff, Harriette McAdoo, applied and was considered for a position as a professor with the Department of Family and Community Development, College of Human Ecology, University of Maryland. Although she claims that she was orally offered the job and that she orally accepted it, she was notified in writing in June, 1980, that her application for the position had been rejected. She then filed a Title VII complaint with the Equal Employment Opportunity Commission, claiming that she had been discriminated against on the basis of race, age, and sex. Shortly thereafter, she filed this action, claiming, at that time, that her civil rights had been violated. Later, after disposition of the Title VII complaint by the EEOC, she filed an amended complaint adding a Title VII claim to her case.

The defendants filed a motion to dismiss and later a motion for summary judgment, and plaintiff filed a motion for summary judgment. Responses to all motions have been received, and the motions are ripe for resolution.

The plaintiff is seeking relief under 42 U.S.C. §§ 1981, 1983, and 2000e. She has named as defendants John S. Toll, President of the University of Maryland; Robert Gluckstern, Chancellor of the University of Maryland; William Kirwan, Vice-Chancellor of the University for Academic Affairs; John R. Beaton, Dean of the College of Human Ecology; William J. Hanna, Chairman of the Department of Family and Community Development; George Funaro, Provost, Division of Human and Community Resources; and the University of Maryland. In addition to maintaining that these defendants were responsible for denial of her application for the professorship on the basis of her race, she alleges—and it appears to be undisputed—that the position was later filled, as a junior-level professorship, by a white woman.

The defendants have raised numerous claims for dismissing certain causes of action or certain defendants in their motion to dismiss. Many of these grounds are re-alleged in the motion for summary judgment. Each of the claims will be considered in turn, and then the plaintiff's cross-motion for summary judgment will be resolved.

## STATUTE OF LIMITATIONS

The first challenge to the sufficiency of the complaint raised by the defendants in their motion to dismiss the first amended complaint is that the plaintiff's causes of action under §§ 1981 and 1983 are time-barred. Neither statute contains an express period of limitations, so the Court must look to state law to find the controlling period. *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Defendants urge that the six-month limitations period contained in the Maryland discrimination statute, Md.Ann.Code art. 49B § 9(a) (1979 replacement volume), is the "most appropriate" state limitations period.

Plaintiff alternatively presses for the applicability of the general three-year limitations period found in Md.Cts. & Jud.Proc. Ann. § 5–101 (1980 replacement volume).

The Fourth Circuit addressed this issue recently with regard to both sections of Title 42. In *McNutt v. Duke Precision Dental & Orthodontic Lab.*, 698 F.2d 676 (4th Cir.1983), the court held that the three-year period would be applicable to § 1981 actions in Maryland. That ruling was extended to include employment discrimination claims lodged against state officials under § 1983 in *Grattan v. Burnett*, 710 F.2d 160 (4th Cir.1983). This decision was affirmed very recently by the Supreme Court in *Burnett v. Grattan*, —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). It is rare indeed that a federal court is guided in resolving a dispute between litigants by on-point precedent issued by the United States Supreme Court within the past month in an unanimous decision.

## MONETARY RELIEF UNDER §§ 1981 and 1983

Although the plaintiff will be allowed to seek an award for backpay from the defendant under Title VII (42 U.S.C. § 2000e–5(g)), the defendants seek dismissal of any monetary claims against them under 42 U.S.C. § 1983.

■ Absent state consent, the Eleventh Amendment generally bars any award of retroactive compensatory relief which would be paid out of a state treasury. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Prospective relief may be granted even if one of its results will be to deplete the state treasury. *Id.* Here, the plaintiff does not sue the state directly, but she does sue (1) university officials solely in their official capacities, and (2) the university. Any damages awarded against the University will certainly be borne by the general taxpayers, as held in *Bickley v. University of Maryland*, 527 F.Supp. 174 (D.Md.1981), and supported by a review of the relevant statutes regulating the University. *See, e.g.,* Md.Educ.Code Ann. § 13–101, § 13–105.

As to the individual defendants sued in their official capacities, courts have repeatedly held that an award against an officer of a state agency in his or her official capacity constitutes an award against the state. *Ford Co. v. Dep't. of Treasury*, 323 U.S. 459, 462–64, 65 S.Ct. 347, 349–51, 89 L.Ed. 389 (1945); *Dawkins v. Craig*, 483 F.2d 1191 (4th Cir.1973). Accordingly, damages may not be awarded against any of the defendants in this case under §§ 1981 or 1983.

■ However, the Supreme Court has held that federal courts may award retroactive backpay against state officials under Title VII, because Title VII was enacted under the Enforcement Clause of the Fourteenth Amendment, superseding the state immunity provisions of the Eleventh Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Accordingly, the only monetary relief which the plaintiff may be awarded is that to which she is entitled under Title VII, that is, back pay, less the plaintiff's "interim earnings or amounts earnable with reasonable diligence" by the plaintiff. 42 U.S.C. § 2000e–5(g).

## TITLE VII CLAIMS AGAINST INDIVIDUALS

■ The defendants next claim that they are entitled to dismissal of the plaintiff's Title VII claims against all six individual defendants because they were not named as respondents in the EEOC complaint filed by the plaintiff. Because they were not named in the original Title VII administrative complaint, they say, the Court lacks subject-matter jurisdiction over the claims against them.

A copy of the actual EEOC charge appended to the plaintiff's first amended complaint formally names only the University of Maryland as the "discriminating employer," and 42 U.S.C. § 2000e–5(f)(1) expressly provides that "a civil action may be brought against the respondent named in the charge."

The seminal Fourth Circuit case on interpretation of this "naming requirement" is

*Mickel v. South Carolina State Employment Service,* 377 F.2d 239 (4th Cir.1967). In *Mickel,* a Title VII civil action against an employer was dismissed because the employer, a defendant named in the civil action, was not named in the charge filed with the EEOC. The court there, in rejecting a spurious claim that the employer was the "agent" of the respondent named in the charge, opened up the possibility of a future agency exception to the naming requirement. 377 F.2d at 241.

At least two more-recent decisions issued in this district have taken up the suggestion of *Mickel* and determined that limited exceptions exist to the Title VII naming requirement. *Chastang v. Flynn and Emrich Co.,* 365 F.Supp. 957 (D.Md.1973), *aff'd in relevant part,* 541 F.2d 1040 (4th Cir.1976), held that "where there is substantial, if not complete identity of parties before the EEOC and the Court, it would require an unnecessarily technical and restrictive reading" of the naming requirement to deny jurisdiction. 365 F.Supp. at 964, cited favorably in *EEOC v. Am. Nat. Bank,* 652 F.2d 1176, 1186 (4th Cir.1981). *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670 (D.Md.1979), addressed a situation almost identical to that presented here. In *Vanguard,* plaintiffs had named the employing entities in their administrative charges, but not important officials of the entities whom they named in their civil action. 471 F.Supp. at 687. *Vanguard* held that the plaintiffs had substantially complied with the naming requirement, particularly since

> [it] has not been asserted that [the defendant] lacked actual notice of plaintiffs' charges ... or that the EEOC's actions with regard to conciliation of those charges were in any way affected ... 471 F.Supp. at 688–89.

*Vanguard* applied a four-part test which originated in *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977), and was endorsed in *Eggleston v. Chicago Journeyman Plumbers,* 657 F.2d 890, 905–06 (7th Cir.1981). The factors to be applied include:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Vanguard,* 471 F.Supp. at 688.

Several courts, in discussing judicially created exceptions to the naming requirement, have noted that Congress could not have intended that employees who believe they are the victims of discrimination should be blocked from filing civil actions against their employers simply because they, as laymen, did not realize that failure to name certain individuals in the EEOC charges would block further action against those individuals.

> We do not believe that the procedures of Title VII were intended to serve as a stumbling block to the accomplishment of the statutory objective. To expect a complainant at the administrative stage, usually without aid of counsel, to foresee and handle intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for procedural error, would place a burden on the complainant which Congress neither anticipated nor intended.

*Evans v. Sheraton Park Hotel,* 503 F.2d 177, 183 (D.C.Cir.1974).

The Court agrees with the ruling in *Evans,* and with the four-part test propounded by the Third Circuit, and endorsed by the Seventh Circuit. A review of the background of this case under those four fac-

tors indicates that all of the individual defendants named by the plaintiff in this action were officials of the University of Maryland acting in their official capacities at the time of the conduct which is the subject of this suit. Whatever roles they had in the rejection of the plaintiff's application could easily have been ascertained at the time of the filing of the EEOC charge. Their interests would appear to be identical to those of their employer (the University of Maryland), which was named in the EEOC charge. No prejudice could have resulted from the absence of their names in the EEOC charge, since those responsible for the plaintiff's rejection were apparently interviewed as part of the EEOC investigation (*see* letter of Dorothy Mead, dated Sept. 18, 1981, and attached to the first amended complaint as "Exhibit 2"). And the fourth factor listed above would appear to have no relevance in this case.

Accordingly, the motion to dismiss all Title VII claims against the individual defendants on the grounds that they were not named in the original EEOC charge will be denied.

LACK OF PERSONAL INVOLVEMENT

In their motion to dismiss and again in their motion for summary judgment, four of the individual defendants, Toll, Gluckstern, Funaro, and Kirwan argue that this Court must dismiss all claims against them under § 1981 and § 1983 because they had no personal involvement in the decision to reject the plaintiff's application. The plaintiff has responded by claiming that some of those individuals were actually involved in the disposition of her job application, and that the others are "legally responsible" for the decision.

■ The defendants are correct in arguing that liability under § 1983 is conditioned on a showing of some personal involvement or participation in the denial of civil rights. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1978), *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This element of § 1983 liability has been applied to prevent suit against a college official who had no "personal involvement" in a

decision not to renew a contract of a basketball coach. *Jacobs v. College of William and Mary*, 517 F.Supp. 791, 803 (E.D. Va.1980), *aff'd*, 661 F.2d 922 (4th Cir.), *cert. denied*, 454 U.S. 1033, 102 S.Ct. 512, 70 L.Ed.2d 477 (1981). Supervisory liability cannot be automatically ruled out in a § 1983 action, however, since a supervising individual or body may be held liable under § 1983 for failure to adequately supervise or control, *Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133, 1143 (4th Cir.1982), or where the supervising defendant is responsible for a policy or custom (either explicit or implied) which resulted in the deprivation of rights, *Wellington v. Daniels*, 717 F.2d 932, 935 (4th Cir.1983).

■ The plaintiff does not dispute that defendants Toll, Gluckstern, and Kirwan had no personal involvement in the decision to reject the plaintiff's application (indeed, it is quite possible that they did not know of the decision until served with the summons in this matter). *See* Opposition to Defendant's Motion for Summary Judgment, p. 6. There has been no allegation—nor any evidence—presented to the Court in the form of interrogatories, depositions, or affidavits, that would indicate any policy resulting in racial discrimination in employment decisions. Accordingly, the defendants' motion to dismiss or in the alternative, for summary judgment, will be granted as to defendants Toll, Gluckstern, and Kirwan under § 1983.

■ With respect to defendant Funaro, the plaintiff argues that defendant Hanna testified in his deposition that Funaro received the plaintiff's dossier and returned it to Hanna with instructions to gather further information. While the defendant argues that Funaro's action was merely a ministerial decision because the dossier did not contain all the information required, his activities did show some personal involvement with the application, and it would be inappropriate for this Court to make a determination, at this point, that his activities could not have been discriminatory.

The defendants seek to transfer the § 1983 requirement of personal involve-

ment into § 1981. Several courts have held that no personal involvement is required for liability to be established under § 1981, since *respondeat superior* applies to § 1981 cases. *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir.1977), *Miller v. Bank of America*, 600 F.2d 211, 213 (7th Cir.1979). The Court notes, in passing, that this question was left open by the Supreme Court in *General Bldg. Contractors v. Pa.*, 458 U.S. 375, 392, 102 S.Ct. 3141, 3151, 73 L.Ed.2d 835 ("Even if the doctrine of *respondeat superior* were broadly applicable to suits based on § 1981 ...") and 395 ("On the assumption that *respondeat superior* applies to suits based on § 1981, ...") (1982). Recognizing the major distinctions in the legislative history and language between §§ 1981 and 1983, at least one other court has held that the "municipal immunity" provided under § 1983 would not extend to actions under § 1981. *Mahone v. Waddle*, 564 F.2d 1018, 1031 (3d Cir.1977).

However, even if the doctrine of *respondeat superior* creates liability on the part of an employer for the acts of an employee in violation of § 1981, there could be no dispute that, in this case, defendants Toll, Gluckstern, and Kirwan were not the employers of those responsible for the denial of the plaintiff's application. Accordingly, their motion to dismiss all claims against them under § 1981 will be granted.

The defendants make the same claim with regard to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) which imposes liability for employment discrimination on "employers," which are defined as including both those individuals or entities which are commonly thought of as "employers" and their "agents."

> ... the term "employer" under Title VII has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspects of an individual's compensation, terms, conditions or privileges of employment.

*Spirt v. Tchrs. Ins. and Annuity Ass'n.*, 475 F.Supp. 1298, 1308 (S.D.N.Y.1979), *aff'd in relevant part*, 691 F.2d 1054 (2d Cir.1982). The term "agents" has been broadly construed by the courts.

> Liberal construction is to be given to the definition of employer as defined by the Civil Rights Acts ... For Title VII purposes, it is not necessary for individuals or the Council to have total control or ultimate authority over hiring decisions. If the involvement is sufficient and necessary to the total employment process, the individual is considered an employer...

*Rivas v. State Bd. for Community Colleges*, 517 F.Supp. 467, 470 (D.Col.1981).

One court which considered the scope of the term "agents" reviewed and summarized several relevant decisions of other courts.

> Generally, an agent of an employer who may be sued as an employee in Title VII suits has been construed to be a supervisory or managerial employee to whom employment decisions have been delegated by the employer. For example, the president of a college who acts as the agent of the board of trustees may be sued as an employer in an employment discrimination suit... Similarly, the superintendent of a school district, as agent of the district, ... and the manager of an Employment Security Commission Office as the agent of the state commission, ... may be sued as an employer under Title VII.

*York v. Tenn. Crushed Stone Ass'n.*, 684 F.2d 360, 362 (6th Cir.1982).

In a somewhat analogous case, one court determined that past and present members of a local school board and past and present school officials were liable for an instance of alleged employment discrimination involving one teacher.

> There is no question that the City of Portland and the School Committee are both "employers" for purposes of Title VII... And as that statute includes "any agent" of such an employer within the statutory definition, the past and present members of the School Committee and superintendents of the school system also qualify as "employers" if

they were agents of either the City or the School Committee.

*Curran v. Portland Super. Sch. Comm.,* 435 F.Supp. 1063, 1073 (D.Me.1977).

It may seem odd that an individual occupying a supervisory position could be held liable for the acts of his underlings when the employer of both can also be held liable, particularly where the supervisor had no personal involvement in the discriminatory acts of those working for him. However, placing an affirmative duty to prevent discriminatory acts on those who are charged with employment decisions appears to be consistent with the aims of Title VII.

> Holding responsible those who control the aspects of employment accorded protection under Title VII is consistent with the congressional intent both that the Act's effectiveness not be frustrated by an employer's delegating authority ... and that the Act be interpreted liberally in order to achieve its remedial purpose of eradicating discrimination in employment.

*Spirt, supra,* 475 F.Supp. at 1308.

■ Accordingly, those individuals who are charged with the responsibility of making—or contributing to—employment decisions for the University of Maryland are liable as its agents under Title VII. The first amended complaint states that defendant Toll is President of the University, and "runs, operates, controls, and manages ... all aspects of its employment and appointment process." With regard to defendant Gluckstern, the first amended complaint alleges that he is the Chancellor of the College Park campus of the University, and is, therefore, responsible for "approving all appointments of senior rank faculty." Finally, the complaint names Kirwan as the Vice Chancellor for Academic Affairs for the College Park campus, "responsible for its employment and appointment process." These portions of the complaint sufficiently allege that these individuals are agents of the University with regard to employment decisions of the type the plaintiff is challenging, and the defendants have not raised any facts in their summary judgment mo-

tion which would allow the Court to find, as a matter of law, that these individuals are not such agents. Accordingly, the motion for summary judgment will be denied with regard to Title VII claims of the plaintiff against the individual defendants.

## PRIMA FACIE CASE

■ The United States Supreme Court has instructed District Courts, where possible, to organize the evidence and burdens of proof in a Title VII employment discrimination case to determine whether a prima facie case of discrimination has been presented. After such evidence has been presented, of course, the defendant has the opportunity to attempt to show that the actual reason for the adverse employment action was not race or sex discrimination.

The defendants maintain in their summary judgment motion that the plaintiff should not be permitted to proceed with her Title VII claim because she cannot make out a prima facie case. They argue that, in order to establish a prima facie case for discrimination in a rejection of an employment application, a plaintiff must show:

> ... (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications he was rejected; and (iv) that, after his rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The defendants present undisputed evidence that the position which the plaintiff applied for was filled by a white woman who was hired at a junior-level position (the plaintiff would have been hired at a senior-level position). They claim, therefore, that the fourth prong of the *McDonnell Douglas* test, *supra,* is not satisfied, since the position did not remain open.

However, as the plaintiff correctly notes, the factors listed above are not—and could not—be specifically and precisely tailored

to fit every situation. The Supreme Court noted as much:

> The facts necessarily will vary in Title VII cases, and the *specification above of the prima facie proof* required from the respondent *is not necessarily applicable in every respect to differing factual situations. Id.* at fnote. 13 (emphasis added).

Indeed, the Fourth Circuit has summarized the test propounded in *McDonnell Douglas,* and its successor case of *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), so that the requirement of showing that the position remained open—or was filled by someone who is not a member of the plaintiff's protected class—is not a strict one.

> In establishing a prima facie case of racially discriminatory treatment in violation of Title VII, a plaintiff must show by a preponderance of the evidence that he applied for an open position for which he was qualified, but *was rejected under circumstances that give rise to an inference of unlawful discrimination.*

*Cuthbertson v. Biggers Bros., Inc.,* 702 F.2d 454, 458 (4th Cir.1983) (emphasis added).

The mere downgrading of a position so that a junior-level applicant was hired—particularly where the decision to do so was made after the plaintiff had been rejected—would not be enough to refute the plaintiff's prima facie case, if one is established. While the downgrading of the position may be evidence of a nondiscriminatory intent which would be considered by a fact-finder, change in status could not be allowed to cover up a rejection made with discriminatory intent.

Therefore, the defendants' motion for summary judgment on Title VII claims brought against all defendants will be denied.

## CLAIMS AGAINST BEATON AND HANNA

■ The final portion of the defendants' motion for summary judgment asks that claims lodged by the plaintiff against individual defendants Beaton and Hanna be denied. The defendants claim that these defendants cannot be liable since they supported the plaintiff's application. Dr. Hanna's initial support for the plaintiff is evidence that he did not act in a racially discriminatory fashion—evidence which should be considered by the fact-finder. However, that evidence is simply not enough to establish, as a matter of law, that he did not act in a racially discriminatory fashion in failing to "forward the plaintiff's candidacy for consideration," as the defendants admit. The evidence may also show that Beaton did, in fact, wholeheartedly support the plaintiff's candidacy. This, though, is a question of material fact, which is under dispute.

Accordingly, summary judgment will not be entered for either defendant Hanna or defendant Beaton.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

■ The plaintiff claims that she is entitled to summary judgment because the undisputed facts can lead to only one conclusion—that she was rejected because of her race. However, the defendants have presented evidence showing that there are disputes as to a number of material issues, particularly whether the defendants had a legitimate, nondiscriminatory reason for not hiring the plaintiff.

Therefore, the plaintiff's motion for summary judgment will be denied.