**Michele CROSTEN, Plaintiff,**

v.

**David KAMAUF, et al.**

**Civil Action No. WMN 95–1934.**

United States District Court,
D. Maryland.

March 25, 1996.

Stephen C. Wilkinson, and Stephen C. Wilkinson, P.A., Cumberland, MD, for Plaintiff Michele Crosten.

Jay R. Fries, and Kruchko & Fries, Baltimore, MD, for Defendant David Kamauf.

Robert S. Paye, and Geppert, McMullen, Paye & Getty, Cumberland, MD, for Defendant Memorial Hospital and Medical Center of Cumberland, Inc.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court is Defendants' Motion to Dismiss. Paper No. 8. Plaintiff has opposed the motion, and Defendants have replied. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Michele Crosten has brought this action against her former employer, Memorial Hospital and Medical Center of Cumberland ["Memorial"], and one of her former supervisors, David Kamauf, alleging that she was subjected to a sexually hostile work environment. Specifically, Plaintiff alleges that Defendant Kamauf made repeated and unwanted sexual advances toward her and that Memorial, although aware of Kamauf's harassment of Plaintiff, did not take adequate steps to stop that harassment. Plaintiff further alleges that her emotional reaction to Kamauf's behavior ultimately reached a level of severity that she was forced to resign her position.

Plaintiff asserts claims under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ["Title VII"] against both Memorial and Kamauf, as well as various common law claims against Memorial. Defendants now move to dismiss the following claims on the ground that Plaintiff failed to exhaust her administrative remedies as to these claims:

—Counts I and III, the Title VII claims brought against Defendant Kamauf; and

—Count VII, the Title VII/Retaliation claim brought against Defendant Memorial.

Defendants also move to dismiss the following claims for failure to state a claim upon which relief can be granted:

—Counts I, II, III, IV, and VII, Plaintiff's Title VII claims, to the extent they are based on the United States or Maryland Constitutions;[1]

—Counts V and VI, Negligence;

—Count VIII, Invasion of Privacy;

—Count IX, Intentional Infliction of Emotional Distress;

—Count X, Breach of Implied Contract and Breach of Covenant of Good Faith and Fair Dealing;

—Count XI, Fraudulent Misrepresentation; and

—Count XII, Wrongful Discharge.

## II. STANDARD FOR MOTION TO DISMISS

■ This motion is made pursuant to both Rule 12(b)(1) and Rule 12(b)(6). A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) may attack the complaint on its face, in that the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of the underlying jurisdictional allegations contained in the complaint. The burden is on the party asserting subject matter jurisdiction to allege and prove jurisdiction. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). When a motion attacks the complaint on its face, the court accepts the allegations in the complaint as true, as it would on a motion pursuant to 12(b)(6). *Id.* When a motion challenges the underlying allegations in the complaint, however, the court may consider evidence outside of the complaint to determine whether sufficient facts support the plaintiff's jurisdictional allegations. In considering that evidence, the Court may resolve factual disputes to determine the proper disposition of the motion. *Id.*

■ A motion made pursuant to Fed. R.Civ.P. 12(b)(6) allows a claim to be dismissed for failure to state a claim upon which

---

**1.** Defendants do not challenge Counts II or IV in this motion, to the extent they are premised on Title VII.

relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim. *Chertkof v. Baltimore*, 497 F.Supp. 1252, 1258 (D.Md.1980). The standard for a motion to dismiss is well known: a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Faulkner Advertising Assoc. v. Nissan Motor Corp*, 905 F.2d 769, 771–72 (4th Cir.1990). For the purposes of ruling on a motion under Rule 12(b)(6), the Court must accept the allegations contained in the complaint as true, and must liberally construe the complaint as a whole. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Finlator v. Powers*, 902 F.2d 1158 (4th Cir.1990).

With these principles in mind, the Court will address the arguments presented by the parties.

## III. DISCUSSION

### A. Violation of United States Constitution and Maryland Declaration of Rights

In Counts I, II, III, IV and VII, Plaintiff alleges that Defendants' conduct was violative of unspecified provisions of the United States Constitution and the Maryland Declaration of Rights. Defendants move to dismiss this aspect of those claims arguing that Plaintiff cannot state a claim for such a violation as she has alleged no facts to support a finding of state action. Plaintiff concedes "an action for such violations, separate from that provided by Title VII, cannot be maintained absent the presence of some form of state action" and further concedes that, in the instant case, there is no such state action. Accordingly, Plaintiff's constitutional claims included in Counts I, II, III, IV and VII will be dismissed.

### B. Individual Liability under Title VII

Defendants argue that the Title VII claims against Defendant Kamauf should be dismissed in that Title VII does not impose individual liability on supervisory employees, but only on the actual employing entity, in this case, Memorial. In addition, Defendants argue that, even if the Court finds that Title VII liability could extend to supervisory employees, Kamauf should be dismissed because Plaintiff failed to name him in her EEOC charge.

### 1. Liability of Supervisory employees

█ Title VII of the Civil Rights Act of 1964 makes it unlawful for "employers" to discriminate against any individual on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a)(1). At least until very recently, it was clear that the Fourth Circuit took the position that, under certain conditions, supervisory personnel could be included in the definition of "employers" for purposes of Title VII liability. In the leading decision on this issue, *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989), the Fourth Circuit clarified,

An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. The supervisory employee need not have the ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions. Furthermore, an employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor. As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes.

879 F.2d at 104 (citations omitted).

Defendants argue in the instant motion that *Paroline* was "implicitly" overruled by the Fourth Circuit's more recent decision in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). *Birkbeck* was an age discrimination suit brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ["the

ADEA"]. The plaintiffs, who were allegedly discharged because of their age, sued the company that formerly employed them, as well as the vice president of the company who was primarily responsible for their discharge. Defendants in the instant action note that, in discussing whether the ADEA's definition of "employer" was sufficiently broad to encompass supervisory employees, the court noted similarities between the definitions of employers under the ADEA and under Title VII. In rejecting supervisory employee liability under the ADEA, the Court opined, "[e]mployer liability ensures that no employee can violate the civil rights laws with impunity, a safeguard that has proven sufficient with respect to Title VII, the ADEA's closest statutory kin." *Birkbeck,* 30 F.3d at 510.

The Court agrees that the reasoning of *Birkbeck* appears somewhat inconsistent with the reasoning of *Paroline.* Nonetheless, the Fourth Circuit expressly limited its holding in *Birkbeck* so as not to overrule its holding in *Paroline.* While rejecting supervisor liability in the case before it, the court stated in a footnote, "[a]n employee, however, may not be shielded as an employer's agent in all circumstances. We address here only personnel decisions of a plainly delegable character." 30 F.3d at 510 n. 1. The court then cited *Paroline,* a sexual harassment case, as an example of a situation where personal liability under Title VII remains a question of fact. *Id.*

Other courts in this circuit, relying on this distinction drawn in *Birkbeck,* have allowed for the imposition of individual liability in Title VII sexual harassment cases. *See, e.g., Shoemaker v. Metro Information Services,* 910 F.Supp. 259, 265 (E.D.Va.1996) ("This court holds that supervisors may be individually liable in Title VII cases where they wield significant control over plaintiffs and their conduct cannot be categorized as a plainly delegable duty,"); *Turner v. Randolph County,* 912 F.Supp. 182 (M.D.N.C.1995) (while critical of the reasoning of *Paroline* and noting that the weight of recent authority is shifting away from individual liability, holding "this court is bound to apply the current law as established by the Fourth Circuit [which is that] individual defendants can be held individually and personally liable for violations of 42 U.S.C. § 2000 *et. seq* "). Likewise, this Court finds that under the existing law in this circuit, there is at least the potential for individual liability under Title VII.

## 2. Title VII's Naming Requirement

Under Title VII, a civil action may be brought only "against the respondent named in the [administrative] charge." 42 U.S.C. § 2000e–5(f)(1). Kamauf argues that the Title VII claims against him should be dismissed because Plaintiff failed to name him as a Respondent in her Title VII charge filed with the EEOC. The "Charge of Discrimination," dated and signed by Plaintiff on August 25, 1994, Defendants' Exhibit 1, lists only Memorial as the entity that discriminated against Plaintiff. Defendant Kamauf is nowhere mentioned in the document.

Plaintiff counters that she did name Kamauf in her EEOC charge. In Plaintiff's view, her EEOC charge was not the August 25, 1994 document identified by Defendant. Plaintiff claims, instead, that her charge was a letter she sent to the EEOC on or about June 17, 1994. Plaintiff's Exhibit 1. In this letter, Plaintiff identified Defendant Kamauf as her supervisor and detailed the nature of his actions relative to her claims. According to Plaintiff, the EEOC prepared the August 25 document as a summary of her claim and forwarded that document to her for signature. She opines that this was done so that she could correct a "technical deficiency" in her charge, *i.e.,* that the charge be signed under penalty of perjury. Thus, she concludes, the August 25 document is nothing more than an amendment to her letter of June 17. Consistent with this theory, Plaintiff alleges in her Complaint that she filed charges of discrimination and unfair employment practices against defendants on or about June 17, 1994. Complaint at ¶ 4.

Even accepting Plaintiff's version of these events, the Court is not satisfied that Plaintiff's allegations can support this Court's jurisdiction over the Title VII claims against Kamauf. The Fourth Circuit has stressed that Title VII's naming requirement serves two purposes: "First, it notifies the charged

party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Alvarado v. Bd. of Trustees,* 848 F.2d 457, 458–59 (4th Cir.1988) (citations omitted). Plaintiff does not explain how the letter written by Plaintiff to the EEOC served either purpose. Under Plaintiff's version of the events, there is no indication that Defendant Kamauf had notice that he was also intended as a Respondent, or that Kamauf was afforded the opportunity to participate in the conciliation process.

■ Plaintiff argues in the alternative that, should the Court find that Kamauf was not named in the EEOC charge, her claim against Kamauf remains viable under a limited exception to the Title VII naming requirement outlined in *McAdoo v. Toll,* 591 F.Supp. 1399 (D.Md.1984). Under this exception, courts are to consider four factors in determining whether a Title VII action can be maintained against a party not named in the EEOC charge:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

> 2) whether, under the circumstances, the interest of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

> 4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*McAdoo,* 591 F.Supp. at 1403. Of these four factors, the second and third are the most important as they are most reflective of the two-fold purpose of the naming requirement.

*Mayo v. Questech, Inc.,* 727 F.Supp. 1007, 1011 (E.D.Va.1989).

In considering these factors, the Court finds that the narrow *McAdoo* exception to the naming requirement will not save Plaintiff's Title VII claims against Defendant Kamauf. In *McAdoo,* the unnamed individuals were officials "acting in their official capacities" at the time of alleged discriminatory conduct and the Court found their interest to be "identical to those of their employer." 591 F.Supp. at 1404. The conduct for which Plaintiff seeks to hold Kamauf liable was not conduct pursuant to his official duties. Thus, the interests of Memorial and Kamauf in the conciliation process would not necessarily be identical. Furthermore, the *McAdoo* court found no prejudice to the unnamed individuals in that they participated in the EEOC proceedings. *Id.* The prejudice to Kamauf in not being named, in contrast, is considerable. As a result of Plaintiff's failure to name him as a respondent, Kamauf had no indication that Plaintiff sought to hold him personally liable for the alleged conduct and had no opportunity to conciliate the charge against him in the administrative proceeding.

The Court is aided in its conclusion regarding this issue by the fact that Plaintiff was represented by counsel during the entire administrative procedure. In her June 17, 1994 letter, Plaintiff specifically requested that all correspondence be conducted through her legal counsel. *See* Plaintiff's Exhibit 1. While courts have shown leeway for unrepresented individuals navigating through Title VII's administrative proceedings,[2] Plaintiff's counsel should have been aware of the importance of naming Kamauf on the administrative charge if it was Plaintiff's intent to seek to hold him personally liable. If the August 25, 1994 charge did not accurately reflect Plaintiff's allegations or intentions in initiating the EEOC proceedings, it was her counsel's responsibility to make the necessary correction.

---

**2.** *See, e.g., Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890 (7th Cir.1981) (noting "[c]omplainants often file EEOC charges without the assistance of counsel and are not versed either in the technicalities of pleading or the jurisdictional requirements of the Act itself."), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).

## C. Retaliation Claim

Memorial provides pastoral counseling services, including psychological counseling and therapy, to both the general public and to its employees. Shortly after Plaintiff left Memorial's employ, she began seeing one of the counselors employed by Memorial. By the end of July 1994, Plaintiff and/or her husband combined had approximately sixteen sessions with that counselor and had a session scheduled for early August 1994. Plaintiff was informed by her counselor prior to her August session, however, that her counseling would be discontinued at the instruction of Defendant Memorial.

 Plaintiff alleges that the termination of her counseling was in retaliation for her having sent the June 17, 1994 letter to the EEOC. Memorial now moves to dismiss Plaintiff's retaliation claim on ground that Plaintiff failed to allege "retaliation" in her August 25, 1994 charge. Memorial argues that Plaintiff's failure to exhaust her administrative remedies as to the retaliation claim divests this Court of jurisdiction over that claim.

Plaintiff counters that under *Nealon v. Stone,* 958 F.2d 584 (4th Cir.1992), her claim is not barred. In *Nealon,* the Fourth Circuit held that, in the usual situation, a plaintiff can raise a retaliation claim for the first time in federal court. The court found that rule to be the "inevitable corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." 958 F.2d at 590. The rule was also based "on practical concerns: '[H]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation.' " *Id.* (quoting *Malhotra v. Cotter & Co.,* 885 F.2d 1305 (7th Cir.1989)).

Memorial, citing *Riley v. Technical & Management Services, Inc.,* 872 F.Supp. 1454 (D.Md.1995), argues that because the alleged retaliatory act occurred prior to Plaintiff's signing of the August 25, 1994 charge, *Nealon* is not applicable to Plaintiff's claim. In *Riley,* the plaintiff alleged that her employer took retaliatory actions after she had complained of discriminatory conduct in the workplace, but before she filed her EEOC charge. This Court dismissed the retaliation claim, distinguishing *Nealon.*

> The Courts have recognized that a plaintiff need not exhaust his administrative remedies for retaliation that grows out of an earlier charge. *Nealon* [at 590]. This rule recognizes that a plaintiff will be reluctant to again report to the EEOC after his employer has taken action against him for filing the first charge.
>
> However, this rule does not apply in this case. Plaintiff must exhaust their administrative remedies when the alleged retaliation could have been raised in the original EEOC complaint. Here, each alleged act of retaliation occurred prior to the filing with the EEOC, but the Plaintiffs still did not allege retaliation in their charges. Therefore, the allegations of retaliation cannot withstand [the defendant's] motion for summary judgment.

*Riley,* 872 F.Supp. at 1459–60.

As Judge Williams concluded in *Riley,* this Court finds that *Nealon* is inapplicable under the facts presented. On August 25, 1994 when Plaintiff signed her Charge of Discrimination summarizing the basis of her claim, Memorial had already terminated her counseling. If she believed that this termination was in retaliation for her having sent the June 25 letter, she could have amended the summary and marked the box entitled "retaliation" before signing the form. Plaintiff's failure to do so robbed the parties of the opportunity to address this issue in the administrative proceedings. The concerns raised in *Nealon* about a complainant's reluctance to file a second charge are simply not relevant here and cannot be employed to excuse that failure. In submitting the official, sworn statement of her claim, she had the responsibility to make certain that it accurately reflected the scope of her complaint at that time. Again, the fact that she was represented by counsel at the time she

completed the charge bolsters this conclusion.

Because Plaintiff failed to exhaust her administrative remedies regarding her retaliation claim, this Court is without subject matter jurisdiction over that claim and accordingly, Count VII must be dismissed.

### D. Common Law Negligence Claims

■■■ In Count V of the Complaint, Plaintiff alleges that Defendant Memorial negligently failed to train and supervise its employees and to develop and implement an effective policy to prevent sexual harassment. In Count VI, Plaintiff alleges that Memorial was negligent in the manner in which it responded to her concerns about Kamauf's attitude and behavior. Defendants move to dismiss these counts on the ground that they are duplicative of Count II, the Title VII sexual harassment/discrimination claim. The Court agrees.

In *Maxey v. M.H.M. Inc.*, 828 F.Supp. 376 (D.Md.1993), the plaintiff, whose Title VII claim was precluded by her failure to exhaust administrative remedies, attempted to bring a negligence claim based on allegations that she was subjected to a sexually hostile work environment. The plaintiff argued, "if a reasonable person would supervise her employees to prevent sexual harassment and if a particular employer fails to do so, she may be found liable for having been negligent." *Id.* at 378. Judge Motz rejected that argument, noting that " 'reasonableness' within the meaning of tort law is not a floating concept but is itself rooted in public policy." *Id.* In the context of hostile environment sexual discrimination, the source of the policy is " 'statutory, and exclusively statutory,' " arising out of Title VII and its state law counterpart. *Id.* (quoting *Watson v. Peoples Security Life Ins. Co.*, 322 Md. 467, 588 A.2d 760, 766 (1991)).

Plaintiff concedes in her Opposition that these "negligence" claims can only be sustained within the statutory framework of Title VII. She argues, however, that *Maxey* is inapposite in that, unlike the plaintiff in *Maxey*, she is bringing her claim within the statutory framework of Title VII. Unlike Maxey, she has exhausted her administrative remedies. Nonetheless, this distinction does not address the duplicative nature of Counts V and VI. If Counts V and VI do no more than attempt to impose liability on Memorial for its alleged failure to conform to the dictates of Title VII in its efforts to prevent sexual harassment, or to properly respond to a report of sexual harassment, these Count merely restate the claim brought under Title VII in Count II.

Accordingly, Counts V and VI will be dismissed.

### E. Invasion of Privacy

■■■ Plaintiff bases her Invasion of Privacy claim on internal disclosures that she believes must have been made between Memorial's administration and Memorial's pastoral counseling center. Based on her belief that her counseling was terminated because of her complaint to the EEOC, she concludes that Memorial's administration must have informed the counseling center that she had filed an EEOC claim, and that the counseling center must have informed the administration that she was a psychotherapy patient.

Of the four categories of conduct recognized under the tort "Invasion of Privacy," Plaintiff has indicated that she is asserting a claim for "invasion of privacy by intrusion of seclusion." Opposition at 11. In *Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133, 502 A.2d 1101, *cert. denied*, 306 Md. 289, 508 A.2d 488, *and cert. denied*, 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986), the Maryland Court of Special Appeals stated that "the gist of the offense is the intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* at 163, 502 A.2d 1101. Furthermore, the intrusion must be of a nature that is "highly offensive to a reasonable person." *Id.*

Memorial moves to dismiss the claim arguing, in essence, that the fact that Plaintiff was seeing a counselor was not a private matter. Memorial reasons that, because Plaintiff could have been seen by anyone going to or coming from her counseling appointments, "[a]nything visible in a public place can be given publicity and Plaintiff

cannot complain that Memorial Hospital observed what anyone else would have been free to see." Motion at 19. Memorial also contends that because the counseling center only disclosed the fact that Plaintiff was in therapy, and nothing more, that limited disclosure would not be highly offensive to a reasonable person. *Id.*

The Court will not dismiss this claim at this time. Memorial speculates that Plaintiff's conduct would have revealed to the public that she was engaged in therapy. That is an inference that would be impermissible to make at this stage in the proceedings. As to the offensiveness of the disclosure, the Court cannot say, as a matter of law, that disclosing the fact that someone is in psychotherapy could not be highly offensive to a reasonable person. As Plaintiff has observed, "Psychotherapy remains a stigma, even in an enlightened world." Opposition at 13. The Maryland legislature acknowledged that stigma in treating the disclosure of "directory information"[3] developed in connection with the delivery of mental health services differently than information related to other health care services. *See* Md. Health Gen.Code Ann. § 4–301(b)(2); *see also id.* § 4–307 (general provisions governing disclosure of mental health records).

### F. Intentional Infliction of Emotional Distress

■ The elements that must be present to impose liability for intentional infliction of emotional distress are now well established. The plaintiff must prove: (1) defendant's conduct was reckless or intentional; (2) that conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Batson v. Shiflett,* 325 Md. 684, 734, 602 A.2d 1191 (1992) (citing *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977)). The Court need not look beyond the second element to conclude that Plaintiff has failed to state a claim as a matter of law.

**3.** "Directory information" is "information concerning the presence and general health condition of a patient who has been admitted to a

For conduct to be considered "extreme and outrageous" under the "high standard of culpability" established by Maryland courts, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris,* 281 Md. at 567, 380 A.2d 611 (quoting Restatement (Second) of Torts § 46, comment d). As "outrageous conduct," Plaintiff points to, *inter alia,* Memorial's assignment of Plaintiff to work on a special computer project with Kamauf despite its knowledge of Kamauf's propensity to harass Plaintiff, Memorial's failure to "follow-up on the assignment to determine if Plaintiff was alright," and Memorial's interference with Plaintiff's psychotherapeutic relationship. Opposition at 14–15.

Maryland courts considering this tort in the employment context have found more egregious conduct to fall short of the "extreme and outrageous" standard. *See, e.g., Harris; Kentucky Fried Chicken Nat'l Management Co. v. Weathersby,* 326 Md. 663, 607 A.2d 8 (1992). Accordingly, Defendant's motion will be granted as to Plaintiff's claim for the intentional infliction of emotional distress.

### G. Fraudulent Misrepresentation

■ The basis for Plaintiff's fraudulent misrepresentation claim relates to a promise allegedly made by Kamauf to promote Plaintiff to a certain accounting position. As alleged in the Complaint, at some time, at least by 1991, Plaintiff became aware of a position in the accounting section of Memorial that would become available in 1993. Kamauf allegedly informed Plaintiff that he intended to promote her into that position and encouraged her to gain additional training for that purpose. Relying on the promise of that position, Plaintiff took accounting and computer classes at the Community College.

■ Five elements are required to state a claim for fraudulent misrepresentation:

health care facility." Md. Health Gen.Code Ann. § 4–301(b)(1).

(1) that the representation made [was] false;

(2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge;

(3) that it was made for the purpose of defrauding the person claimed to be injured thereby;

(4) that such person not only relied upon the misrepresentation, but had the right to rely upon it in full belief of its truth, and that s[he] would not have done the thing from which the injury resulted had not such misrepresentation been made; and

(5) that [s]he actually suffered damage directly resulting from such fraudulent misrepresentation.

*Miller v. Fairchild Indus.*, 97 Md.App. 324, 341–42, 629 A.2d 1293 (1993).

Memorial moves to dismiss this claim on the basis that "predictions or statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud." Motion at 28 (quoting *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 232, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336, *reh'g denied*, 471 U.S. 1049, 105 S.Ct. 2043, 85 L.Ed.2d 341 (1985)). To avoid this result, Plaintiff contends that her claim falls under an exception to that rule that provides that "[i]f such promissory or predictive statements are made with the present intention not to perform ... courts will not apply the general rule against deceit actions based on misrepresentations concerning future acts." *Miller* at 343, 629 A.2d 1293. In Plaintiff's view, Kamauf's promise to promote her to the accounting position was fraudulent when made because that promise was made with an unrevealed, material condition, *i.e.*, that Plaintiff have a sexual relationship with Kamauf.

Accepting Plaintiff's allegations as true, the Court agrees that Plaintiff has stated a claim for fraudulent misrepresentation. If Kamauf intended, at the time he made the alleged representation, to not promote Plaintiff unless she consented to his sexual advances, his statement was false when made and he would have been aware of its falsity. Memorial's motion will be denied as to Count XI.

### H. Breach of Implied Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Wrongful Discharge

■ Defendants move to dismiss Count X of the Complaint on the ground that Maryland does not recognize a cause of action for breach of the implied covenant of good will and fair dealing if the plaintiff was an "at-will" employee. *See Suburban Hospital Inc. v. Dwiggins*, 324 Md. 294, 596 A.2d 1069 (1991). Defendants also argue that Plaintiff's at-will status compels the dismissal of Count XII of the Complaint as well. Under Maryland law, an at-will employee may recover damages for wrongful discharge only when that discharge violates a clear mandate of public policy. *Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464 (1981).

■ The Court will grant the motion as to each of these counts. Plaintiff does not address either argument in her Opposition. Furthermore, a review of the Complaint reveals no basis to conclude that Plaintiff is not an at-will employee or any allegation that her discharge violated some public policy.[4]

### IV. CONCLUSION

For all of the above stated reasons, the Court will dismiss Counts I, III, and VII for lack of subject matter jurisdiction and Counts V, VI, IX, X, and XII for failure to state a claim upon which relief can be granted. Counts II and IV will be dismissed to the extent they are premised on the United

---

**4.** Plaintiff cannot rely on the alleged sexual harassment or discrimination as the violation of a clearly mandated public policy to support her wrongful discharge claim. "Abusive discharge is inherently limited to remedying only those dis-charges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 561 A.2d 179 (1989). These violations are remedied under Title VII.

States Constitution or the Maryland Declaration of Rights. The motion will be denied as to Counts VIII and XI.

### *ORDER*

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 25th day of March, 1996, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion to Dismiss (Paper No. 8) is hereby GRANTED in part and DENIED in part, in that;

a) Counts I, III, and VII are DISMISSED for lack of subject matter jurisdiction;

b) Counts V, VI, IX, X, and XII are DISMISSED for failure to state a claim upon which relief can be granted;

c) The portions of Counts II and IV premised on the United States Constitution or the Maryland Declaration of Rights, are DISMISSED for failure to state a claim upon which relief can be granted, Counts II and IV remain viable to the extent premised on the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* and

d) the motion is DENIED as to Counts VIII and XI; and

2. That the Clerk of the Court shall mail copies of the foregoing Memorandum and this Order to all counsel of record.